Canara Bank, London Branch v MVP Group Intl., Inc. (2026 NY Slip Op 01868)

Canara Bank, London Branch v MVP Group Intl., Inc.

2026 NY Slip Op 01868

Decided on March 26, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 26, 2026

Before: Webber, J.P., González, Mendez, O'Neill Levy, Hagler, JJ. 

Index No. 654602/23|Appeal No. 6203-6204|Case No. 2025-01082, 2025-01205|

[*1]Canara Bank, London Branch, Appellant,
vMVP Group International, Inc., Respondent.

Sabharwal & Finkel LLC, New York (Adam Finkel of counsel), for appellant.
Barclay Damon LLP, New York (Robert K. Gross of counsel), for respondent.

Order, Supreme Court, New York County (Andrea Masley, J.), entered on or about January 31, 2025, which granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's cross-motion to voluntarily discontinue the action or, alternatively, to amend the complaint, unanimously reversed, on the law, without costs, plaintiff's cross-motion granted to the extent that the action is discontinued, and defendant's motion for summary judgment denied as moot.
Order, same court and Justice, entered on or about January 31, 2025, which denied plaintiff's motion to dismiss defendant's first, third, fourth, fifth, sixth (in part), seventh, and eighth counterclaims, unanimously reversed, on the law, without costs, and the motion granted.
Given the absence of special circumstances, the court should have exercised its discretion to permit plaintiff to voluntarily discontinue this action pursuant to CPLR 3217 (b) in favor of its out-of-state collection efforts (see Wells Fargo Bank, N.A. v Chaplin, 107 AD3d 881, 883 [2d Dept 2013]; Urbonowicz v Yarinsky, 290 AD2d 922, 923 [3d Dept 2002]). Defendant does not claim any prejudice, nor is any apparent, as the request to discontinue was made relatively early in the litigation and the discontinuance had no effect on defendant's counterclaims (see Shepherd v Workmen's Circle Multicare Ctr., 224 AD3d 485, 486 [1st Dept 2024]). It is within a court's sound discretion to deny a motion to discontinue where the plaintiff sought to avoid an obvious adverse outcome (see e.g. Marinelli v Wimmer, 139 AD3d 914, 915 [2d Dept 2016]; Baez v Parkway Mobile Homes, Inc., 125 AD3d 905, 908 [2d Dept 2015]; GMAC Mtge., LLC v Bisceglie, 109 AD3d 874, 876 [2d Dept 2013]). Here, however, it was not clear at the time plaintiff moved to discontinue that defendant's motion for partial summary judgment would be granted. The mere pendency of a motion for summary judgment is not itself a special circumstance warranting denial of a motion to discontinue (see Astil v Kumquat Props., LLC, 125 AD3d 522, 523 [1st Dept 2015]). Defendant's argument that its debt has already been satisfied may presumably be raised in any foreign action. In light of our disposition of this issue, defendant's motion for summary judgment and plaintiff's cross-motion for leave to amend are moot.
Although defendant's counterclaims survive the discontinuance, we find that they should have been dismissed on the merits. As a preliminary matter, we find that defendant did not waive its right to assert counterclaims, since the waiver language in the promissory notes at issue relates to payments made by defendant, not to separate alleged wrongdoing by plaintiff. In any event, the counterclaims fail because plaintiff did not have any contractual obligations that could have been breached by the alleged misconduct. Without any underlying obligation to remit the subject $30 million to defendant or to accept payments from the Debt Service Reserve Account (DSRA), plaintiff incurred no liability by failing to do so.
Specifically, section 5.33 of the May 2021 Restructured Credit Agreement (RCA) between plaintiff and defendant is the only possible source of plaintiff's alleged contractual obligation to deduct loan payments from the DSRA. However, although plaintiff is bound as a signatory to that agreement, the provision at issue did not clearly obligate plaintiff to accept loan payments from the DSRA, stating only that plaintiff "may" withdraw funds therefrom to satisfy unpaid principal or interest.
With respect to the $30 million remittance, we preliminarily find that the counterclaims related to it should have been asserted in India, since the relevant documents provided that the agreements were governed by Indian law and that Indian courts would have exclusive jurisdiction of any disputes arising out of them. In any event, the counterclaims fail to state a cause of action. The September 2021 sanction letter executed by nonparties Bank of Baroda (BOB) and Primacy and § 8.2(g) of the September 2021 Master Restructuring Agreement between plaintiff, BOB and other lenders (the September MRA) are the only possible sources of plaintiff's alleged contractual obligation to remit the funds to defendant. Although the RCAs required defendant to obtain a $30 million equity investment, they did not specify its source, and the May 2021 sanction letter executed by BOB and defendant listed several possible sources but did not specify the funding mechanism. Because plaintiff was not a party to the September sanction letter, it is not bound thereby. Although plaintiff was a party to the September MRA, which incorporated the September sanction letter by reference and included its own provision requiring that $30 million "shall be infused in MVP in accordance with the terms set out in the Sanction Letters," the September MRA did not create any obligations on the part of plaintiff with respect to the $30 million, as plaintiff had no apparent role in maintaining or transferring these funds. This conclusion is bolstered by the September MRA's express directives that "[a]ny debt or other obligations arising under the Restructuring Documents to a Finance Party from any Obligor shall be a separate and independent debt or obligation" and that "[n]one of the Finance Parties shall be responsible for the obligations of any other Finance Party."
Defendant's argument that plaintiff is liable for BOB's failure to remit the full $30 million because BOB acted as plaintiff's agent in doing so is also unavailing, as this conduct was not undertaken in BOB's capacity as "Lead Bank" under the September MRA, but in its capacity as a lender with separate lender obligations.
Even assuming plaintiff had a contractual obligation to remit the $30 million to defendant, defendant did not have standing to enforce this obligation, as it was not a signatory to the September MRA and sanction letter, from which it arose. Defendant was not a third-party beneficiary of those agreements, which contained an explicit disclaimer of third-party beneficiary status and no express exception thereto for defendant. The September and May 2021 agreements are also not properly read together, as they were executed at different times, by different parties, in connection with the restructuring of different loans, do not incorporate or reference each other, and include conflicting choice of law and forum provisions (see generally National Union Fire Ins. Co. of Pittsburgh, Pa. v Williams, 223 AD2d 395, 396 [1st Dept 1996]).
Finally, defendant's tortious interference counterclaim should also have been dismissed in its entirety. The motion court sustained this counterclaim insofar as it was
based on the DSRA allegations, but a plain reading of defendant's answer reveals that it is not based on such allegations.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 26, 2026